UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
UNITED STATES OF AMERICA,     )
                              )
v.                            )   Criminal No. 05-10319-RCL
                              )
STEPHAN STELMACH and          )
BRYAN McHUGH,                 )
            Defendants        )
_____)

ORDER ON MOTIONS TO SUPPRESS EVIDENCE

Before me is a motion by defendant Stephan Stelmach ("Stelmach") to suppress evidence and witness identifications and a motion by defendant Bryan McHugh ("McHugh") to suppress fruits of an allegedly warrantless search and seizure, and to suppress witness identifications. These motions were referred to Magistrate Judge Bowler for a report and recommendation. Judge Bowler held an evidentiary hearing on the motions, received briefs from the parties, and issued two reports with recommendations, one dated January 9, 2007 (docket # 60) (the "January 9 Report") and a supplemental report dated February 2, 2007 (docket # 69) (the "February 2 Report"). In the January 9 Report, Judge Bowler recommended that the defendants' motions to suppress be denied to the extent that they relate to a pocket knife and ball peen hammer recovered from McHugh during what the Magistrate Judge found to be a valid investigatory stop and frisk pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968); Stelmach's knife and other items obtained from the defendants' saddlebags during what Judge Bowler found to be a consensual search of the defendants' motorcycles at the site of the stop; and the statements made by the defendants both at the site and later at the Ashland police station. Judge Bowler further recommended that the

motions of the defendants to suppress the witness identifications be denied on the ground that the show-up identification procedures used were not impermissibly suggestive.

Judge Bowler, however, expressly reserved ruling on the suppression motions insofar as they extended to the evidence seized during the course of the search of Stelmach's motorcycle at the Ashland police station following the arrests of the two defendants. She found that the government's argument that it had probable cause to search the defendants' motorcycles at the scene, which justified the later search at the station, required further briefing. With respect to the government's second argument, that the search of Stelmach's motorcycle at the police station was a valid inventory search conducted after the vehicle was lawfully impounded, Judge Bowler found that the officers failed to comply with standard impoundment and inventory procedures, given that Stelmach had made alternative arrangements for the care of his motorcycle. The Judge therefore concluded that the decision to tow his motorcycle, and subsequent inventory search, were unlawful. She found, however, that the decision to tow McHugh's motorcycle and its subsequent search at the Ashland police station was lawful because there was no other person on the scene who had agreed to take possession of McHugh's motorcycle.

After considering supplemental briefing filed by both parties, Judge Bowler recommended that I find that the officers did not have probable cause to search the defendants' motorcycle at the site of the stop, and therefore the search of Stelmach's motorcycle at the Ashland police station was unlawful. Thus, she ultimately recommended that the motion to suppress be granted to the extent that it relates to evidence seized from Stelmach's saddlebag at the Ashland police station.

After *de novo* review of the issues raised by the motions, I accept Judge Bowler's recommendations with one exception.  Contrary to Judge Bowler's finding, I find that the search of Stelmach's saddlebags at the Ashland police station was valid.

In the January 9 Report, Judge Bowler found that both defendants initially consented to the search of their saddlebags.  The record amply supports that finding, which I adopt.  Later, however, citing to the defendants' affidavits (in which the defendants declare that they took steps to protect their privacy interest in the contents of their motorcycles), Judge Bowler found that the defendants had withdrawn their consents to the search of their saddlebags.

I do not find so clear an indication that the defendants withdrew their consent.  "[C]onduct withdrawing consent must be an act clearly inconsistent with the apparent consent to search, an unambiguous statement challenging the officer's authority to conduct the search, or some combination of both."  *United States v. Sanders*, 424 F.3d 768, 774 (8th Cir. 2005) (quoting *Burton v. United States*, 657 A.2d 741, 746-47 (D. C. App. 1994)); *United States v. Cadieux*, 324 F. Supp. 2d 168, 170 (D. Me. 2004) ("[T]he law generally requires that the withdrawal of consent amount to an unequivocal act or statement of withdrawal" (citation and internal quotation marks omitted)).  Moreover, if not effectively withdrawn at the site, consent of the defendants to search of the saddlebags was not automatically withdrawn upon their arrests.  *United States v. Mendez*,  431 F.3d 420, 427 (5th Cir. 2005) (noting that "the fact that a person is formally placed under arrest sometime after [giving consent to a search] does not work as an automatic withdrawal of the consent previously given") (citation and internal quotation marks omitted).  Perhaps Judge Bowler concluded that Stelmach's request that a friend retrieve his motorcycle following the initial search of the saddlebags at the site of the stop was an

"unequivocal act or statement of withdrawal."[1] *See Lee v. City of Chicago*, 330 F.3d 456, 464 (7th Cir. 2003) ("Generally speaking, a person who has given valid consent to a seizure may withdraw that consent by requesting the article's return"). In any case, the question is a close one, which I need not resolve.[2]

Unlike Judge Bowler, I find that the original search of the defendants' saddlebags at the site of the stop was lawful, justified because the officers had probable cause to conduct the search. Probable cause to conduct a vehicle search "exists where the facts and circumstances known to the arresting officers are sufficient to cause a person of reasonable caution to believe the search is justified. That is, there must have been particular facts indicating that, at the time of the search, the vehicle or a container within it carried contraband, evidence of a crime, or other seizable matter." *United States v. Martinez-Molina*, 64 F.3d 719, 730 (1st Cir. 1995) (internal citations omitted). Whether probable cause exists for a vehicle search in a particular factual context is a question that must be evaluated from the totality of the circumstances within which the search was conducted. *Id*. at 726.

---

[1] I find no similar or other support in the record for the conclusion that McHugh withdrew his consent. McHugh's declaration, in his affidavit, that "I took steps to protect my privacy interests in my person and the contents of my motorcycle" is not a statement that I interpret as an assertion that he withdrew consent to search the saddlebag of his motorcycle. The statement could easily mean that he did not give consent for the search in the first place. Judge Bowler found otherwise. That finding is amply supported in the record, and on *de novo* review, I agree with it. On the other hand, the statement could mean that McHugh realized that the officers had no other authority to search his saddlebag than his consent to the search, and that, by giving consent and thereby ceding authority for the search to the officers, McHugh was taking steps to protect his privacy interests.

[2] I also do not need to resolve the question of whether, if Stelmach's consent was not withdrawn, that consent was nevertheless limited in scope to a search at the site of the stop and did not extend to the further search at the police station.

In the February 2 Report, Judge Bowler concluded that, while the question was a close one, the officers did not have probable cause to search Stelmach's saddlebag for "additional weapons or other contraband."[3] February 2 Report at 10. Judge Bowler's ruling that the saddlebag search was not supported by probable cause thus appears to be based on the premise that having found weapons fitting the description of those allegedly used in the reported assault at T. J.'s Bar and Spirits ("T. J.'s") , there was no basis shown in the record for a further search.

The circumstances of the search for saddlebags are set forth in detail at pp. 3-15 of the January 9 Report and summarized at pp. 3-5 of the February 2 Report. There is therefore no need to rehearse that background in full here. However, there are certain facts that are particularly noteworthy here. Judge Bowler found that the officers were aware of the reputation of the Outlaws for dangerousness; that reputation included alleged involvement in organized criminal activities that comprehended offenses ranging from prostitution to murder. The officers also knew that ball peen hammers were favored weapons of the Outlaws; the Outlaws were also known frequently to be armed with knives and firearms. January 9 Report at 3-7; February 2 Report at 4. These findings, together with the circumstances as a whole, lead me to conclude that, having found both a knife[4] and a hammer on the person of McHugh, and no such weapons on Stelmach, it was reasonable for the officers to believe that Stelmach, like McHugh and Outlaws generally, would have a ball peen hammer and/or a knife somewhere within easy reach-- somewhere like the saddlebag of his motorcycle. Indeed, having discovered one of the two

---

[3] The information available to the officers at the time of the search indicated that the assault at T. J.'s Bar and Spirits involved the use of a knife and a ball peen hammer. As Judge Bowler pointed out, a knife and a ball peen hammer had been found in the pat-frisk of McHugh. February 2 Report at 10.

[4] Judge Bowler describes the knife as a "pocket knife" and more particularly as a "lock-back knife." January 9 Report at 7 and n. 1.

5

defendants armed and, under all the circumstances, reasonably believing both to have been involved in the episode at T. J.'s, a reasonably cautious officer could easily conclude that the other defendant likewise was armed.[5] Moreover, at the time of the stop, the officers could not be certain that the weapons found on McHugh, although generally fitting the reported description,[6] were the ones allegedly used in the incident at T. J.'s. These factors, taken together with the other circumstances found by Judge Bowler to exist at the time the officers engaged the suspects at the site of the stop were, in my view, sufficient as probable cause for a search at the site. Because there was probable cause at the site, the officers were justified in making the later search at the police station. *See California v. Acevedo*, 500 U.S. 565, 570 (1991) (noting "that the police could search later whenever they could have searched earlier [based on probable cause], had they so chosen") (citing *Chambers v. Maroney*, 399 U.S. 42, 51-52 (1970)).

For the foregoing reasons, I accept and adopt the recommended rulings Judge Bowler made in the January 9 Report and reject those made in the February 2 Report. Accordingly, I deny in full the motions of the defendants to suppress evidence.

SO ORDERED.

|  |  |
|---|---|
| DATED: April 20, 2007 | /s/ REGINALD C. LINDSAY<br>United States District Judge |

---

[5] Judge Bowler, in fact, described the search of the saddlebags of the defendants as having been motivated by a concern "that the suspects might have additional weapons . . . ." January 9 Report at 9. That finding may be one that describes the subjective state of mind of the officers; however, it also describes an objective reaction to the circumstances confronting the officers at the time.

[6] The broadcast report of the use of the knife at T. J.'s by Lieutenant Rohmer was simply that "one of the individuals involved in the fight could be armed with a knife." The knife was not otherwise described.